RICHARD VASELLI,

Plaintiff,

VERSUS

UNITED STATES OF AMERICA AND JOHN F. O'NEILL,

Defendants.

———————————

**MEMORANDUM AND ORDER**
October 3, 2014

———————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Richard Vaselli ("Vaselli" or "plaintiff") brings this negligence action against the United States of America (the "Government") and John F. O'Neill ("O'Neill") (collectively, "defendants") pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80 ("FTCA"). He alleges that O'Neill, a United States Postal Service ("USPS") letter carrier, negligently drove his USPS truck into plaintiff's car while making a U-turn on Mills Pond Road in Saint James, New York on September 23, 2011. Defendants have filed a counterclaim against plaintiff, alleging that plaintiff's negligent driving caused $2,993.47 in property damage to the USPS truck.

The Court held a bench trial on the issue of liability on July 28, 2014. After carefully considering the evidence introduced at trial, the arguments of counsel, and the controlling law on the issues presented, the Court issues its findings of fact and conclusions of law, as required by Federal Rule of Civil Procedure 52(a).

As an initial matter, the Court dismisses all claims against O'Neill because the Government has certified that O'Neill was acting within the scope of his employment at the time of the accident in question. (*See* Certification, ECF No. 6-1); *see also* 28 U.S.C. § 2679(d)(1) ("Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant."); *Rivera v. United States*, 928 F.2d 592, 609 (2d Cir. 1991) (holding that, under § 2679, individual defendants are

immune from common law tort claims, and that suit against the United States is "the exclusive remedy" for torts committed by government agents). Accordingly, the Court considers only plaintiff's claims against the Government, as well as the Government's counterclaim against plaintiff.

Next, as discussed in detail *infra*, the Court concludes by a preponderance of the evidence that plaintiff's negligent driving was the sole cause of the accident with O'Neill's truck. Accordingly, plaintiff is entitled to nothing, and plaintiff is liable to the Government for the full amount of the damage to the USPS truck caused by plaintiff's negligence in an amount to be determined in a separate bench trial.

I. BACKGROUND

Plaintiff filed the complaint on December 18, 2012. Defendants answered the complaint and filed a counterclaim on February 22, 2013. Plaintiff has never answered the counterclaim, even after being given an opportunity to do so after the bench trial was held.[1]

Defendants submitted their proposed findings of fact and trial brief on July 21, 2014. Plaintiff submitted his proposed findings of fact and conclusions of law on July 23, 2014.

The Court held a bench trial on the issue of liability on July 28, 2014. Plaintiff and O'Neill testified as part of plaintiff's case-in-chief. O'Neill and James Adler ("Adler"), the supervisor of customer service for the post office in St. James, New York, testified for the defense. Both sides stipulated to the admission in evidence of certain photographs taken after the accident.

After the bench trial concluded, the Court granted the parties the opportunity to submit revised proposed findings of fact in light of the evidence adduced at trial. The Government submitted its proposed findings of fact on August 29, 2014, and plaintiff submitted his proposed findings of fact on September 21, 2014.

The Court has fully considered all of the evidence presented by the parties, as well as their written submissions. Below are the Court's Findings of Fact and Conclusions of Law.

II. FINDINGS OF FACT

The following section constitutes the Court's Findings of Fact pursuant to Federal Rule of Civil Procedure 52(a)(1).[2] These Findings of Fact are drawn from witness testimony at trial and the parties' trial exhibits. In general, having considered all of the evidence (including the credibility of the witnesses), the Court found O'Neill's and Adler's testimony entirely credible, but found that certain parts of plaintiff's testimony, noted *infra*, were not credible.

On September 23, 2011, at approximately noon, a car driven by plaintiff collided with a USPS truck driven by O'Neill at the intersection of Mills Pond

---

[1] The Court need not rely upon plaintiff's failure to answer the Government's counterclaim in concluding that plaintiff is liable to the Government for the damage to the USPS truck. Based upon the Court's findings of fact, discussed *infra*, the Court concludes that the Government has established all elements of its negligence counterclaim by a preponderance of the evidence. These findings of fact support the Court's conclusion that plaintiff is liable to the Government for the damage to the USPS truck that was caused by plaintiff's negligent driving.

[2] To the extent that any Finding of Fact reflects a legal conclusion, it shall to that extent be deemed a Conclusion of Law, and vice-versa.

2

Road and Vineyard Court in Saint James, New York. (*See* Tr. 8–9, 34, 46.[3]) Mills Pond Road is a two-way street running north-south, and a double yellow line divides the two lanes of traffic (one lane for each direction). (*See id.* at 12, 34–35, 49, 55–56, 75.) There is no shoulder on the sides of the road. (*Id.* at 35, 55.) Vineyard Court runs from west to east into Mills Pond Road, where it ends to create a "T"-shaped intersection. (*See id.* at 18, 34.) There are no traffic signs or signals on Mills Pond Road at this intersection. (*Id.* at 11, 51.)

On the date of the accident, O'Neill was delivering mail in his USPS truck, a 1991 Grumman Long-Life Vehicle, in St. James, New York. (*See id.* at 8–9, 28, 72.) Just before noon, O'Neill parked his truck on the curb of the southbound lane of Mills Pond Road about 200 feet north of the Vineyard Court intersection in order to deliver mail to 14 Mills Pond Road. (*See id.* at 12, 15, 35, 76.) The next delivery on O'Neill's route after 14 Mills Pond Road is on Vineyard Court (*id.* at 12, 76), and O'Neill testified credibly that he always had mail to deliver at one of the six addresses on Vineyard Court (*see id.* at 15). Accordingly, after delivering mail to 14 Mills Pond Road, O'Neill proceeded to drive south on Mills Pond Road toward Vineyard Court. (*See id.* at 15, 35.)

As O'Neill approached the Vineyard Court intersection, he turned on his left turn signal and stopped the truck toward the middle of the southbound lane of Mills Pond Road—about one and one half feet from the curb. (*See id.* at 16, 35–36, 39, 42, 44–45, 98.) In addition to the left turn signal, the truck's hazard lights and headlights were on because it was raining at the time, and the brake lights were also on because O'Neill applied the brakes of the truck before turning. (*See id.* at 14, 31, 36.) O'Neill testified credibly that he was not attempting to make a U-turn. (*See id.* at 39, 98.)

Before turning, O'Neill, who sat on the right side of the USPS truck (*id.* at 28, 72), checked for oncoming traffic and also checked for traffic behind him and to his left by using the truck's mirrors. (*See id.* at 16–17, 36–38.) He did not turn immediately because traffic was moving in both directions on Mills Pond Road. (*See id.* at 16–17, 36–38.) Cars in the southbound lane passed his truck on the left side, and to do so, they had to cross the double yellow line into the northbound lane of traffic because there was not enough room for a car to pass the truck in the southbound lane. (*See id.* at 17–18, 36–38.) Once O'Neill saw that the road was clear, O'Neill began to turn left onto Vineyard Court. (*See id.* at 18, 38.)

Meanwhile, plaintiff was driving his Nissan Altima sedan southbound on Mills Pond Road toward the Vineyard Court intersection. (*See id.* at 58, 66; *see also* Ex. A, at US-16 (depicting Nissan Altima).) Plaintiff was driving from his office at Stony Brook University to the Smith Haven Mall to have lunch. (Tr. 46–48.) He intended to make a left turn at the intersection of Mills Pond Road and Moriches Road (*id.* at 57–58), which is approximately forty to fifty feet south of the Vineyard Court intersection (*see id.* at 20, 51, 58, 66).

Plaintiff drove on Mills Pond Road five times per week and sometimes saw a USPS truck parked at the curb. (*See id.* at 48–49.) Plaintiff also testified that, in the past, he had been able to pass the USPS truck on its left without crossing the double yellow line into the northbound lane (*see id.* at 49–50); however, the Court does not find this testimony credible in light of the other

---
[3] "Tr." refers to the transcript of the bench trial held on July 28, 2014.

3

evidence in the record, discussed *supra* and *infra*, as well as the Court's own assessment of the credibility of the witnesses at trial.

On September 23, 2011, plaintiff first saw O'Neill's truck from about 1,000 feet away. (*Id.* at 58.) He was driving approximately twenty miles per hour as he approached the truck (*id.* at 60, 66), and he decided to pass it (*see id.* at 61–62). According to plaintiff, the truck was parked on the side of the road, and its lights were off. (*See id.* at 52, 58, 63.) The Court does not credit this testimony in light of O'Neill's credible testimony concerning his truck's lights and the location of his truck on Mills Pond Road, and the other evidence (including photographs of the truck following the accident) that the truck's lights were on after the accident, *see infra*. After analyzing the evidence (including the credibility of the witnesses), the Court finds that O'Neill's truck was in the middle of Mills Pond Road with its left turn signal, hazard lights, brake lights, and headlights on when plaintiff attempted to pass the truck. As plaintiff attempted to pass the truck to its left, he neither sounded his horn nor activated his left turn signal. (*See id.* at 57, 62.)

Moreover, the Court finds that plaintiff crossed the double yellow line into the northbound lane of traffic in order to pass the truck from the left side, notwithstanding plaintiff's testimony to the contrary (*see id.* at 65). The Court draws this conclusion from the following evidence in the record: the USPS truck was six feet and four inches wide, excluding the side mirrors, which are seven inches wide (in other words, the truck is seven and one half feet wide from the edge of the right side mirror to the edge of the left side mirror) (*id.* at 72–73); each lane of traffic on Mills Pond Road (measured from the curb to the double yellow lane) is fifteen feet wide (*id.* at 75); and O'Neill testified credibly that his truck was one and one half feet from the curb as he was waiting to turn onto Vineyard Court (*id.* at 44–45). That left only six feet between the left edge of the truck's left side mirror and the double yellow line. Given this narrow space between the truck and the double yellow line, the Court does not believe that plaintiff stayed within his lane. Moreover, O'Neill testified credibly that other cars passing him on his left had to cross the double-yellow line to do so. (*See id.* at 17–18, 36–38.) For all these reasons, the Court finds that plaintiff did not stay within his lane when attempting to pass the truck.

Plaintiff tried to pass the truck just as the truck was turning left, and the front right side of plaintiff's car collided with the left side door of the USPS truck. (*See id.* at 61; *see also id.* at 80, 84.) The crash occurred in the northbound lane of Mills Pond Road. (*See id.* at 64–65; *see also id.* at 84.) Plaintiff's car pushed the USPS truck over the curb of the southeast corner of the intersection. (*See id.* at 24–25, 39, 42; *see also* Ex. A, at US-9.) Plaintiff claims that the truck was making a U-turn from the curb without a turn signal (*see* Tr. at 52, 54), but the Court credits O'Neill's contradictory testimony that he had activated his left turn signal and was making a left turn from the middle of the road, not a U-turn from the curb (*see supra*).

Shards of shattered glass from the truck's left side hit O'Neill in the head, causing him to lose consciousness. (*See id.* at 24, 99.) O'Neill has no memory of the accident itself; his next memory after beginning to make the left turn onto Vineyard Court is waking up in his truck and being treated by emergency medical personnel. (*See id.* at 38–39.)

Adler was notified of the accident and responded to the scene about ten minutes

4

after the accident occurred. (*See id.* at 76, 91.) When he arrived, he observed an ambulance and emergency medical personnel attending to O'Neill, and he checked on O'Neill's condition himself. (*Id.* at 77, 79.) He also saw that the truck's lights were on. (*Id.* at 77; *see also id.* at 84–85.) Adler took photographs of the accident and measured the road. (*Id.* at 79, 96–97.) In the photographs of the truck, the truck's amber signal lights and headlights are on.[4] (*See id.* at 81, 83–85; Ex. A, at US-5, US-7, US-8, US-11, US-12, US-13, US-14, US-16; Ex. B, at P-2, P-3, P-4, P-5, P-8, P-9, P-16.)

### III. BURDEN OF PROOF

Plaintiff bears the burden to prove all elements of his negligence claims by a preponderance of the evidence. *See, e.g.*, *Craig Test Boring Co. v. Saudi Arabian Airlines Corp.*, 138 F. Supp. 2d 553, 557 (S.D.N.Y. 2001). Likewise, the Government bears the burden to prove all elements of its negligence counterclaim by a preponderance of the evidence. *See id.*

### IV. CONCLUSIONS OF LAW

#### A. Legal Standards

"Under the FTCA, courts are bound to apply the law of the state . . . where the accident occurred." *Makarova v. United States*, 201 F.3d 110, 114 (2d Cir. 2000) (citing *Richards v. United States*, 369 U.S. 1, 10–15 (1962)). Accordingly, the Court applies New York law to assess liability in this case.

The elements of a negligence claim brought under New York law are well settled. They are as follows: "(i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002); *see, e.g.*, *Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 177 (2d Cir. 2013); *Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000).

New York law "impose[s] a duty upon drivers to operate their vehicles with reasonable care taking into account the actual and potential dangers existing from weather, road, traffic and other conditions." *Goldstein v. United States*, 9 F. Supp. 2d 175, 186 (E.D.N.Y. 1998) (citing cases). "This longstanding duty requires drivers to maintain a reasonably safe rate of speed, have the automobile under reasonable control, to keep a proper lookout under the circumstances then existing to see and be aware of what was in their view, and to use reasonable care under the circumstances to avoid an accident." *Id.* (citing cases). However, "[t]he driver of a vehicle which is lawfully stopped and waiting in traffic to make a left turn across traffic does not have a duty to anticipate a rear-end collision." *Fiscella v. Gibbs*, 690 N.Y.S.2d 713, 714 (N.Y. App. Div. 1999).

Furthermore, under New York law, "[w]hen a defendant violates a statute that defines the degree of care to be used under certain circumstances, the violation constitutes negligence *per se* if (1) it causes the injury, (2) the plaintiff is a member of the class intended to be benefited by the statute, and (3) the statute is intended to protect against the very hazard that caused the plaintiff's injury." *Mauro v. Costco Wholesale Corp.*, No. 09-CV-1391 (VVP), 2013 WL 3816731, at *4 (E.D.N.Y. July 22,

---

[4] To the extent that plaintiff suggests that the lights on the truck were turned on by emergency workers or someone else after the accident, the Court concludes that there is no credible evidence to support that position.

5

2013). "The plaintiff need not give evidence of duty or breach of duty" because "[v]iolation of the statute alone constitutes negligence." *Id.*; *see, e.g.*, *Chen v. United States*, 854 F.2d 622, 627 (2d Cir. 1988) ("In New York, the 'unexcused omission' or violation of a duty imposed by statute for the benefit of a particular class '*is* negligence itself.'" (quoting *Martin v. Herzog*, 228 N.Y. 164, 168 (1920)) (emphasis in original)). Relevant for purposes of the instant case, the New York Vehicle and Traffic Law ("VTL") "establishes rules of conduct that must be obeyed by motorists and pedestrians, and a violation of the VTL constitutes negligence per se." *Lee v. Charles*, 986 F. Supp. 2d 277, 279 (S.D.N.Y. 2013); *see, e.g.*, *Peralta v. Quintero*, --- F. Supp. 2d ----, No. 12-CV-3864 (FM), 2014 WL 2085708, at *2 (S.D.N.Y. May 20, 2014); *Carovski v. Jordan*, No. 06-CV-716S, 2011 WL 1362624, at *4 (W.D.N.Y. Apr. 11, 2011); *Gray v. Wackenhut Servs., Inc.*, 721 F. Supp. 2d 282, 290 (S.D.N.Y. 2010), *aff'd*, 446 F. App'x 352 (2d Cir. 2011); *Barbieri v. Vokoun*, 900 N.Y.S.2d 315, 318 (N.Y. App. Div. 2010).

In particular, "[c]rossing a double yellow line into the opposing lane of traffic, in violation of Vehicle and Traffic Law § 1126(a), constitutes negligence as a matter of law, unless justified by an emergency situation not of the driver's making." *Gadon v. Oliva*, 742 N.Y.S.2d 122, 123 (N.Y. App. Div. 2002); *see, e,g.*, *Browne v. Castillo*, 733 N.Y.S.2d 494, 495 (N.Y. App. Div. 2001); *Haughey v. Noone*, 691 N.Y.S.2d 553, 554 (N.Y. App. Div. 1999). In other words, "a violation of this statute raises a presumption of negligence." *Adames v. United States*, No. 06-CV-3922 (CLP), 2010 WL 1633441, at *5 (E.D.N.Y. Apr. 21, 2010).

In addition, Section 1160(b) of the VTL provides, in relevant part, that "an approach for a left turn shall be made in that portion of the right half of the roadway nearest the center line thereof." N.Y. Veh. & Traf. Law § 1160(b). Similarly, "U-turns shall be made from and to that portion of the highway nearest the marked center line." *Id.* § 1160(e).

With respect to causation, this element "'incorporates at least two separate but related concepts: cause-in-fact and proximate cause.'" *Aegis Ins. Servs.*, 737 F.3d at 178 (quoting *Monahan v. Weichert*, 442 N.Y.S.2d 295, 298 (N.Y. App. Div. 1981)). "'Cause-in-fact refers to those antecedent events, acts or omissions which have so far contributed to the result that without them it would not have occurred." *Id.* (quoting *Monahan*, 442 N.Y.S.2d at 298). "'Proximate cause serves to limit, for legal or policy reason, the responsibility of an actor for the consequences of his conduct.'" *Id.* (quoting *Monahan*, 442 N.Y.S.2d at 298). More specifically, proximate or legal causation is defined as that "which in a natural sequence, unbroken by any new cause, produces that event and without which that event would not have occurred." *Rider v. Syracuse Rapid Transit Ry. Co.*, 171 N.Y. 139, 147 (1902). "An injury or damage is proximately caused by an act, or a failure to act, whenever it appears from the evidence in the case that the act or omission played a substantial part in bringing about or actually causing the injury or damage, and that the injury or damage was either a direct result or a reasonably probable consequence of the act or omission." *Jund v. Town of Hempstead*, 941 F.2d 1271, 1286 (2d Cir. 1991) (internal citation omitted).

B. Application

The Court concludes that plaintiff's negligent driving on September 23, 2011, was the sole cause of the accident on Mills Pond Road.

First, the Court concludes that plaintiff violated Section 1126(a) of the VTL by crossing the double yellow line, and that this violation constitutes negligence *per se* in this case. O'Neill did nothing that required plaintiff to cross the double yellow line. Instead, plaintiff crossed the double yellow line simply because he was trying to pass O'Neill's truck as O'Neill was waiting to make a left turn. In these circumstances, plaintiff's violation of Section 1126(a) of the VTL constitutes negligence *per se*. *See, e.g.*, *O'Connor v. Lopane*, 805 N.Y.S.2d 125, 126 (N.Y. App. Div. 2005) (affirming summary judgment for defendant, where plaintiff drove vehicle across double yellow line in attempt to pass defendant's truck, and plaintiff failed to come forward with any evidence of defendant's comparative negligence).

Second, even assuming *arguendo* that crossing the double yellow line does not constitute negligence *per se* in this case, the Court concludes that plaintiff's driving breached his general duty to operate his vehicle with reasonable care, and that the breach of this duty was the proximate cause of the accident. O'Neill's truck was situated in the middle of the southbound lane while O'Neill waited to make a left turn, which he indicated by activating the truck's left turn signal. O'Neill's hazard and brake lights were also on, and they would have been visible to plaintiff as he drove southbound toward the truck. Plaintiff attempted to pass O'Neill's truck by crossing the double yellow line and driving in the northbound lane of traffic, where he crashed into O'Neill's truck as it turned left. Plaintiff never indicated he was attempting to pass by honking his horn or activating his turn signal. Based upon these findings, the Court concludes that plaintiff acted negligently in attempting to pass the USPS truck, and that his negligence was a proximate cause of the accident.

Third, the Court concludes that plaintiff's negligence was the sole proximate cause of the accident. The Court finds that O'Neill activated his left turn signal, stopped his truck at the Vineyard Court intersection, and checked for oncoming traffic in both directions before turning. All of these actions suggest prudent driving, not negligence, on the part of O'Neill. Contrary to plaintiff's position, the Court finds that O'Neill was not attempting to make a U-turn from the curb. Moreover, even if O'Neill was not as close to the double yellow line as he could have been, the Court finds that O'Neill's placement on the road did not proximately cause the accident. O'Neill was in the middle of the road, not on the curb, and he had activated his left turn signal. In these circumstances, the Court finds that O'Neill took sufficient steps to notify drivers behind him that he intended to make a left turn onto Vineyard Court. The placement of his truck six feet away from the center line simply did not cause this accident.

Fourth, the Court concludes that the Government has established property damage to the USPS truck as a result of plaintiff's negligence. In particular, Adler's testimony and the photographs taken after the accident indicate that the USPS truck took damage to its left side as a result of the accident.

For all these reasons, the Court concludes that plaintiff has failed to prove all elements of his negligence claims by a preponderance of the evidence, and the

Court grants judgment for the Government on these claims. As for the Government's negligence counterclaim, the Court concludes that the Government has proven all elements of this claim by a preponderance of the evidence. Accordingly, the Court will hold a separate bench trial to determine the amount of the Government's damages.

V. Conclusion

For the reasons set forth herein, the Court concludes that plaintiff has failed to prove all elements of his negligence claims by a preponderance of the evidence. The Court also concludes that the Government has proven its negligence counterclaim by a preponderance of the evidence, and will hold a separate bench trial to determine the amount of the Government's damages.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: October 3, 2014
Central Islip, NY

\*   \*   \*

Plaintiff is represented by Edward J. Garnett, Jr., Riconda & Garnett, 753 W. Merrick Road, Valley Stream, NY 11580 and Patrick J. Hackett, 100 Garden City Plaza, Suite 224, Garden City, NY 11530. Defendants are represented by Loretta E. Lynch, United States Attorney, Eastern District of New York, by James R. Cho, 271 Cadman Plaza East, Brooklyn, NY 11201, and by James Halleron Knapp and Diane C. Leonardo-Beckmann, 610 Federal Plaza, Central Islip, NY 11722.